J-A23001-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DUSTIN R. RICE | : | |
| | : | |
| Appellant | : | No. 882 WDA 2017 |

Appeal from the Judgment of Sentence April 27, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0009273-2015

BEFORE:  BOWES, J., SHOGAN, J., and STABILE, J.

MEMORANDUM BY BOWES, J.:                    FILED DECEMBER 27, 2018

Dustin R. Rice appeals from the judgment of sentence of nine to eighteen years incarceration, imposed following his non-jury trial conviction for involuntary manslaughter.  We affirm.

The trial court ably summarized the relevant events as determined in its fact-finding capacity.

> On July 18, 2015, at approximately 1:30 a.m., Dennis Pence entered "City Tattoo" in the city of McKeesport, Allegheny County. City Tattoo was owned and operated by the Appellant, Dustin Rice, who was present at that time.  Pence and Appellant were known to each other, and both were heavily under the influence of drugs and/or alcohol.  That early morning the two argued over the possible use of drugs and/or alcohol, and eventually a violent and tumultuous confrontation occurred between Pence and Appellant inside City Tattoo.  That confrontation carried over onto the sidewalk outside of the business and into the 300 block of 24th Street, the adjoining residential neighborhood.  At some point in this prolonged yet violent confrontation, Appellant got the "upper hand,"  However, at some point Pence managed to escape the immediate presence of Appellant and seek help at a home at 310

24th Street. Pence knocked loudly on the door of 310 24th Street but received no response. However, Pence's knocking drew the attention of Scott Hill who lived directly across the street and who observed subsequent events from his home. Receiving no response, Pence walked away from the door where he had sought help and into the yard of that residence. There he again encountered Appellant who was now armed with a long, heavy wooden "staff."[3]

Pence, who was unarmed, pushed Appellant, pleading with Appellant to get away from him. Appellant lifted the staff over his head with two hands and struck Pence in the head. This caused the victim to fall "straight back stiff" onto the grass. Appellant then stood over Pence, again raised the staff, and struck Pence again as he lay on the ground. Appellant then left the immediate area. Mr. Hill exited his home and encountered a McKeesport police unit that came onto the scene, apparently in response to a "911" call that had reported the confrontation. Pence was laying on the ground covered in blood and not moving. Shortly thereafter, Appellant returned to the immediate scene, without the staff, requesting police assistance.

Mr. Hill identified Appellant as the person who had attacked Pence with the staff, and Appellant was taken into custody. The wooden staff used in the attack on Pence was recovered nearby under the trailer of a utility truck parked nearby.

The autopsy of Dennis Pence revealed multiple abrasions and bruising on his torso, extremities, and head. The cause of death was blunt force trauma to the head, neck, back, and extremities.

---

[3] Described as a large wooden stick, approximately four feet in length and weighing approximately seven pounds, that had spiraling on the end with red/brown staining on the spiraling part which was entered into evidence as Exhibit 21.

Trial Court Opinion, 1/19/18, at 4-5.

The Commonwealth charged Appellant with one count of criminal homicide, and argued that Appellant was guilty of first-degree murder. The

trial court found Appellant guilty of voluntary manslaughter, and thereafter sentenced him to nine to eighteen years incarceration.

Appellant filed a post-sentence motion for reconsideration, which was denied. Appellant timely appealed, and complied with the trial court's order to file a concise statement of errors complained of on appeal.[1] He presents the following issue for our consideration: "Whether the sentence imposed by the trial court was excessive and an abuse of the trial court's discretion as it was outside and above the aggravated range under the sentencing guidelines?" Appellant's brief at 4.

This claim pertains to the sentencing court's discretion, to which we apply the following standard:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

Commonwealth v. Shull, 148 A.3d 820, 831 (Pa.Super. 2016) (citing Commonwealth v. Antidormi, 84 A.3d 736, 760 (Pa.Super. 2014)).

_____

[1] This Court dismissed the appeal on August 18, 2017, due to the failure to file a docketing statement. However, Appellant's counsel had filed a motion to withdraw, which was granted. New counsel petitioned this Court for reinstatement of the appeal, noting that all prior notices had been mistakenly sent to prior counsel. On September 6, 2017, we granted that request. The trial court thereafter ordered a Pa.R.A.P. 1925(b) statement.

Furthermore, the right to appeal the discretionary aspects of a sentence is not absolute. To determine if the issue is properly before us, we examine the following four criteria:

> (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

Commonwealth v. McLaine, 150 A.3d 70, 76 (Pa.Super. 2016) (citing Commonwealth v. Samuel, 102 A.3d 1001, 1006–07 (Pa.Super. 2014)).

Appellant preserved his issue in a post-sentence motion and filed a timely notice of appeal. However, Appellant's brief has a fatal defect, as it fails to comply with Pa.R.A.P. 2119(f):

> (f) Discretionary aspects of sentence. An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of the sentence.

Id. (emphasis added).

Herein, Appellant has failed to include a separate section of his brief concisely stating why this appeal should be permitted. The Commonwealth has objected to that failure, which precludes this Court from reaching the merits of the claim. See Commonwealth v. Robinson, 931 A.2d 15, 19 (Pa.Super. 2007) ("If a defendant fails to include an issue in his Rule 2119(f)

statement, and the Commonwealth objects, then the issue is waived and this Court may not review the claim."). Accordingly, we may not reach the merits of his claim.

Even if Appellant's brief complied with Pa.R.A.P. 2119(f), we would find that Appellant has failed to present a substantial question. The existence of a substantial question is made on a case-by-case basis. Commonwealth v. Derry, 150 A.3d 987 (Pa.Super. 2016). We grant the appeal "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." Id. at 991 (citing Commonwealth v. Sierra, 752 A.2d 910, 912–913 (Pa. Super. 2000)).

Appellant's argument in that regard is circular: "The argument raised is the sentence was harsh. Based upon the above information, the claim that the sentence was excessive or harsh is shown by the trial court's sentence which is inconsistent with the sentencing code and the sentence fundamentally contradicts norms which underlie the sentencing process." Appellant's brief at 21 (emphasis added). Substantial questions are not self-proving; a litigant cannot simply point to the sentence and claim that it obviously violates a specific provision of the Sentencing Code or is contrary to its fundamental norms. Appellant's complaint that the sentence is unduly harsh is simply an allegation that it is excessive, which generally does not

present a substantial question. See Commonwealth v. Dodge, 77 A.3d 1263, 1271 (Pa.Super. 2013).

Finally, even overlooking that additional defect, we are of the view that the trial court did not abuse its discretion. Substantively, Appellant complains that the sentence is harsh because the judge imposed a sentence of nine to eighteen years, which is one year shy of the statutory maximum of ten to twenty years incarceration. Appellant's prior record score was four, and the guidelines in this case called for a minimum sentence of sixty to seventy-eight months in the standard range, and a minimum of ninety months in the aggravated. Therefore, the instant sentence deviates from the guidelines.

Appellant asserts that the departure cannot be justified as Appellant's crime was an ordinary voluntary manslaughter, and therefore the seriousness of the offense is already accounted for by the guidelines. See Commonwealth v. Vega, 850 A.2d 1277 (Pa.Super. 2004) ("The focus should not be on the seriousness or egregiousness of the offense generally, but, rather, on how the present case deviates from what might be regarded as a 'typical' case of voluntary manslaughter."). If anything, Appellant submits that this case involves more favorable facts since the trial court commented that "whether it's under the prong of serious provocation or imperfect self-defense that the level of culpability rises no greater than that." N.T. Verdict, 2/8/17, at 7. Relatedly, Appellant notes that the decedent was

the initial aggressor, and but for the victim's entering Appellant's business this crime would not have occurred.

As our Supreme Court set forth in Commonwealth v. Walls, 926 A.2d 957 (Pa. 2007), our examination of a sentence is quite deferential, as the "sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." Id. at 961 (citation and quotation marks omitted). "Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review." Id.

Pursuant to 42 Pa.C.S. § 9781(c), when the sentence is outside the applicable guidelines we can vacate and remand only if the sentence is unreasonable. "In all other cases the appellate court shall affirm the sentence imposed by the sentencing court." Id. Walls noted that reasonableness is not defined in the statute and "commonly connotes a decision that is 'irrational' or 'not guided by sound judgment.'" Id. at 963. Walls concluded that this Court can find a sentence not guided by sound judgment or irrational in only two situations. The first is if the sentencing court did not weigh the "general standards applicable to sentencing found in Section 9721, i.e., the protection of the public; the gravity of the offense in relation to the impact on the victim and the community; and the rehabilitative needs of the defendant. 42 Pa.C.S. § 9721(b)." Id. at 964. The other situation is where the sentence

is unreasonable under the standards supplied by 42 Pa.C.S. § 9781(d), which directs this Court to consider the following four factors in determining whether the sentence was unreasonable:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

We cannot agree that the imposed sentence is unreasonable under these dictates. The trial court explained its sentence on the record as follows:

THE COURT: You referred to earlier an assault in 1998. I don't see that. I see simple assault of a child as an M1 from 2008 and a second conviction in that same information, simple assault and an M2. So they're not as dated as you have referenced. I want that to be clear on the record.

In that record and also in response to your remarks regarding his voluntary use of drugs. Of course, he has a history dating back to January of 2000 where he served a period of state incarceration for a drug offense. The drug problem, loosely phrased, has haunted him, I would imagine, since that time.

He was heavily under the influence of a drug and/or alcohol the night, early morning of this incident and that was sort of reflected in the video which was played from the county police homicide unit where he exhibited extreme signs of withdrawal and, of course, that was admitted to one way or another during the course of the proceedings.

The Court incorporates the trial record here in terms of its particular sentence I will impose. The Court acknowledges its responsibility under Title 42 9721, in sentencing [Appellant] to a

- 8 -

period of confinement consistent with protection of the public and gravity of the offenses as it relates to the impact on the life and loss of life of the victim and on the community, as well as the rehabilitative needs of the defendant.

The Court takes into account his statement of remorse regarding his conduct and the Court finds that to be genuine and also consistent with his conduct throughout the course of these proceedings

The Court takes into account the letter from AJ Greco submitted today on his behalf, former police officer from Wilkins Township, who the Court holds in high regard from my experience and my years in the Office of the District Attorney.

The Court takes into account the statement made on his behalf by his mother, as well as his own statement, as well as that made by Mr. Seman on his behalf. The Court has reviewed both presentence reports for purposes of sentencing. The Court takes into account the statement made on behalf of the Commonwealth by Mr. Schultz.

The Court for purposes of the verdict spoke of potential defenses here and also the finding, the applicability of avenues of defenses and/or the reduction from first and third degree murder to voluntary manslaughter.

For purposes of the sentencing, the Court finds actually there are two phases to what occurred during the particular incident and that is the initial confrontation in the tattoo shop where there is a clear finding that [Appellant] was in his place of business when confronted by Mr. Pence and an altercation ensued, in which [Appellant] legitimately defended himself from Mr. Pence's aggression.

However, from that point in time the Court finds that there was a second confrontation on the sidewalk outside of the business which perhaps [Appellant] could have ended the incident. And nonetheless, in fact, he was outside the place of business and the second phase began instead of ending there and the confrontation continued across the highway and into the neighborhood across from the tattoo shop, where while heavily under the influence again of drugs and/or alcohol and the defendant followed Pence onto those neighborhood streets and as Pence was seeking help

at the doorway of one of the neighborhood residents, he was again attacked.

And furthermore, even when Mr. Pence was apparently so disabled or unable to defend himself, he was again attacked as he laid on the ground and was falling to the ground. The autopsy confirms this. The nature of the wounds and the Court again incorporates the trial record and particulars into the autopsy report and finds all of those previous statements and factors, aggravating factors, in terms of sentencing.

The Court has carefully weighed these matters and believes a sentence in the aggravating range is appropriate for loss of life and defendant's voluntary conduct overwhelmed by drugs and/or alcohol and the nature of the attack on Mr. Pence. Any mitigation is so far outweighed by those factors that I articulated that the second phase of this incident that that sentence is appropriate.

Consequently, based on all of that, at the count of voluntary manslaughter [Appellant] will be sentenced to a period of incarceration of 9 to 18 years.

N.T. Sentencing, 4/27/17, at 16-21.

Were we permitted to reach the merits of this claim, we would find no abuse of discretion. The quoted discussion clearly demonstrates that the judge considered 42 Pa.C.S. § 9721(b). The court simply did not weigh those factors in a manner favorable to Appellant. That is not an abuse of discretion.

Finally, we do not deem the sentence unreasonable under the guidelines provided by 42 Pa.C.S. § 9781(d). The nature and circumstances of this offense are doubtlessly brutal. We acknowledge, as the trial court did, that this incident started with the victim entering Appellant's business in the early morning hours. That is a mitigating factor, but we agree with the trial court that what it referred to as the "second phase" of this incident, namely the fact

that Appellant continued the attack after the victim was defenseless, is a relevant consideration. Thus, this sentence is not unreasonable in light of the nature and circumstances of the offense, Appellant's history, the trial court's consideration and opportunity to review the applicable presentence reports, and the guidelines.[2] 42 Pa.C.S. § 9781(d)(1)-(4). We would find no abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/27/2018

_____

[2] Appellant claims that reliance on those facts is improper, as it punishes Appellant for conduct he was not convicted of, i.e., intentional murder. "[T]he trial court is erroneously punishing the Appellant for conduct he was found not guilty of, namely Murder, which requires a finding of malice. Given the trial court's verdict explicitly found no malice . . . the idea of malice being used . . . is unreasonable[.]" Appellant's brief at 23. We disagree. Cf. United States v. Watts, 519 U.S. 148 (1997) (per curiam) (sentencing courts may consider conduct of which the defendants had been acquitted, so long as the conduct is established by a preponderance of the evidence). Appellant complains that deviation from the guidelines was not permitted because this was a "typical" voluntary manslaughter, while asking the Court to ignore the very facts that demonstrate it was not.